UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20185-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,

 Plaintiff,
v.

GERARDLIN PAULEUS,

 Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court on Defendant's Motion to Suppress Statements and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 33, 7/28/08) and Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 34, 7/28/08).  On July 30, 2008, this case was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida. (DE# 35, 7/31/08). Having held an evidentiary hearing on August 5, 2008 and carefully considered the defendant's motions, the government's responses, the parties' supplemental memoranda, the court file and applicable law, the undersigned respectfully recommends that Defendant's Motion to Suppress Statements and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 33, 7/28/08) and Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 34, 7/28/08) be **DENIED**.

**BACKGROUND**

The defendant is charged by indictment in the Southern District of Florida with possession of a firearm and ammunition by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1), possession of crack cocaine with intent to distribute in violation of Title 18, United States Code, Section 841(a)(1), possession of powder cocaine with intent to distribute in violation of Title 18, United States Code, Section 841(a)(1) and possession of a firearm in furtherance of a drug trafficking offense in violation of Title 18, United States Code, Section 924 (c)(1)(A). See Indictment (DE# 1, 3/7/08).

On July 28, 2008, the defendant filed the instant motions, Defendant's Motion to Suppress Statements and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 33, 7/28/08) and Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 34, 7/28/08). The government filed its responses on July 31, 2008. See Government's Response to Defendant's Motion to Suppress Evidence (DE# 36, 7/31/08); Government's Response to Defendant's Motion to Suppress Statements (DE# 37, 7/31/08).

On August 5, 2008, the undersigned held an evidentiary hearing. The government presented the testimony of Detective Brad Burke. The defendant's former girlfriend, Starlavon Hayes, testified on behalf of the defendant. Following the hearing, the undersigned permitted both parties to file supplemental memoranda concerning whether Detective Burke's statement following the discovery of narcotics constituted a custodial interrogation or its functional equivalent. The government and the defendant

filed their supplemental memoranda. See Memorandum in Support of Government's Response to Defendant's Motion to Suppress Statements (DE# 42, 8/6/08); Defendant's Supplemental Memorandum of Law in Support of Motions to Suppress Evidence and Statements (DE# 43, 8/7/08).

## FACTS

On November 29, 2007, Detective Brad Burke of the Miami-Dade Police Department was driving westbound on Northwest 95th Street in Miami, Florida in a marked police vehicle. Detective Burke was in traffic next to a gas station. The defendant, who was driving a Chevrolet Monte Carlo, was trying to enter traffic from the gas station. The defendant abruptly pulled out in front of Detective Burke. Detective Burke noticed that the defendant had a temporary paper tag on his vehicle. The date on the tag appeared to be altered and there was no vehicle identification number ("VIN") written on the tag. The defendant made a right turn and Detective Burke followed. Detective Burke flashed his police lights to initiate a traffic stop. The defendant continued traveling at a "good rate of speed" for two blocks. The defendant stopped suddenly when he reached a stop sign.  Detective Burke parked his police vehicle behind the defendant's vehicle.

Detective Burke approached the defendant's vehicle with his firearm out. Detective Burke asked the defendant for his driver's license, registration and proof of insurance. When the defendant told Detective Burke that he did not have a driver's license, Detective Burke asked the defendant to exit his vehicle. Detective Burke proceeded to handcuff the defendant and sat the defendant on the front bumper of his police vehicle, directly behind the defendant's vehicle. A police back up unit arrived on

3

the scene and Detective Burke asked the passenger of the defendant's car to exit. The passenger was also handcuffed and placed on the bumper of Detective Burke's car. Detective Burke did not read the defendant his Miranda[1] rights.

After placing the defendant under arrest, Detective Burke conducted a computer search and determined that the defendant did not have a driver's license. Detective Burke also ran a VIN search after obtaining the VIN from the front of the defendant's car. The VIN search revealed that the temporary tag did not belong on the defendant's vehicle and that the permanent tag that corresponded to the defendant's vehicle had expired in 2006. Detective Burke observed the defendant's demeanor. The defendant appeared anxious and wanted to expedite the process.

Detective Burke proceeded to conduct an inventory search of the defendant's vehicle.  Detective Burke pointed his flashlight onto the floor of the vehicle and noticed white powder around the center console, where the gear shifts are located. Detective Burke slid his hand inside the center console and touched an object which felt like a plastic baggie. Detective Burke pulled back the console cover and observed a baggie which contained what looked like powder cocaine and crack rocks. Detective Burke pulled out the baggie and showed it to the defendant. Detective Burke stated, "I got it. I found what you were hiding." The defendant responded, "Okay. Let's go."  Detective Burke continued the inventory search and found a firearm near the area where the drugs had been found. Detective Burke retrieved the firearm, made the firearm safe, walked toward the back of the defendant's vehicle and placed the firearm on top of the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

defendant's trunk. Upon seeing the firearm, the defendant made the following statement: "You know officer, listen man, I'll be real with you. The gun is mine, but the dope is not mine and the only reason why I had the gun is for protection" from the defendant's "baby momma's boyfriend."

Detective Burke cited the defendant with a tag violation and with driving without a license. Detective Burke did not remove the temporary tag from the defendant's vehicle. The defendant's vehicle was impounded with the temporary tag. The temporary tag was not recovered.

## LEGAL ANALYSIS

The defendant seeks to suppress the drugs, firearm and ammunition recovered from his vehicle and statements he made during the traffic stop. The defendant argues that he was illegally stopped because Detective Burke did not have requisite probable cause. The defendant further argues that the statements he made to Detective Burke were made pursuant to a custodial interrogation or the functional equivalent of a custodial interrogation, without the benefit of Miranda.

**I.      Whether There Was Probable Cause to Stop the Defendant's Vehicle**

The government has established that Detective Burke had probable cause to stop the defendant's vehicle. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." United States v. Bates, 840 F. 2d 858, 860 (11th Cir. 1988). As long as probable cause exists to believe that a

traffic violation has occurred, the actual motivation of the police officers is immaterial to the reasonableness of the traffic stop. United States v. Holloman, 113 F. 3d 192, 194 (11th Cir. 1997) (citing Whren v. United States, 116 S. Ct. 1769 (1996)).

Detective Burke testified that he stopped the defendant because the temporary tag on the defendant's vehicle appeared altered and was not completely filled out. Specifically, Detective Burke believed that the date on the tag looked altered and the VIN was not written on the tag.[2] The defendant argues that Detective Burke's testimony is less credible because Detective Burke could have kept the temporary tag as evidence that it had been altered. The undersigned is not persuaded by the defendant's argument and finds that, when credible, an officer's testimony is sufficient to support probable cause. United States v. Tomaszewski, 833 F.2d 1532, 1535 (11th Cir. 1987) (finding that probable cause existed based on arresting officers' testimony and noting that "[n]either this court nor any other, so far as we are aware, has required that probable cause be based on something an officer 'can come into court and produce' or 'objectively demonstrate to exist . . . at a later date.'").

The defendant's former girlfriend and the mother of his child, Starlavon Hayes, testified that the tag was not altered. Having observed the demeanor of the witnesses and considered their testimony as a whole, the undersigned credits Detective Burke's testimony that the defendant's temporary tag appeared altered and does not find the testimony of Ms. Hayes credible. See United States v. Boulette, 265 Fed. Appx. 895,

---

[2] Detective Burke testified that an altered tag and a missing VIN constitute traffic violations in Florida. The government cited to Fla. Stat. § 316.605 to show that the altered date was a traffic violation but could not point to any statute requiring that the VIN be displayed on a temporary tag.

898 (11th Cir. 2008)(citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'"). Ms. Hayes testified that she had observed the temporary tag on the defendant's vehicle for about a month prior to the defendant's arrest. According to Ms. Hayes, the tag did not appear altered and the VIN was written on the temporary tag. Ms. Hayes drove the defendant's vehicle with the temporary tag on at least one occasion prior to the defendant's arrest. She testified that she looked closely at the defendant's tag because she wants to "know what's going on" before entering another person's vehicle. Despite this practice, Ms. Hayes testified she did not know who owned the vehicle the defendant had been driving for at least a month or whether the defendant intended to buy it. The undersigned notes that Ms. Hayes has an interest in testifying favorably for the defendant because Ms. Hayes and the defendant previously dated and have a child together.

Detective Burke had probable cause to stop the defendant's vehicle pursuant to a traffic violation. Once Detective Burke determined that the defendant was driving without a license, he had probable cause to arrest the defendant. Detective Burke's search of the defendant's vehicle was a lawful search incident to arrest as well as a proper inventory search. See New York v. Bolton, 453 U.S. 454, 457 (1981) (noting that a search of an automobile may be conducted incident to the lawful arrest of an occupant of that automobile); United States v. O'Bryant, 775 F.2d 1528, 1534 (11th Cir.1985) (noting that "an inventory search permits a thorough search of property lawfully in police custody as long as that search is consistent with the police caretaking

7

function."). In the instant case, there was probable cause to stop the defendant's vehicle, the defendant was lawfully arrested and his vehicle was lawfully searched. Based on the foregoing, the contraband seized from the defendant's vehicle should not be suppressed.

**II.     Whether the Defendant's Statements Were Made in Response to a Custodial Interrogation or its Functional Equivalent**

Miranda prohibits the government from using statements made by a defendant during a custodial interrogation, or the functional equivalent of a custodial interrogation, unless the defendant has first been advised of his constitutional rights. Miranda, 384 U.S. at 478-79. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innnis, 446 U.S. 291, 300-301 (1980). "[B]efore [Miranda] warnings need be given, it must be established that the [defendant] was both 'in custody' and under 'interrogation' by police officers." United States v. Castro, 723 F.2d 1527, 1530 (11th Cir.1984). "[I]n order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." United States v. Phillips, 812 F. 2d 1355, 1360 (11th Cir. 1987) (citing Minnesota v. Murphy, 465 U.S. 420, 430 (1984). In the instant case, the government does not dispute that the defendant was in custody at the time he made the statements but argues that the statements were not made pursuant to a custodial interrogation or its functional equivalent. See Government's Response to Defendant's Motion to Suppress

Statements (DE# 37 at 4, 7/31/08) (noting that "[a]lthough the defendant was in custody at the time he made the statement, the officer did not ask him a question or attempt to elicit a response at that time.").

The parties dispute whether the defendant's statements were made pursuant to a custodial interrogation or its functional equivalent. The Supreme Court defined "functional equivalent of an interrogation" as "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. The focus of the inquiry is the perception of the defendant, not the intent of the officer. Arizona v. Mauro, 481 U.S. 520, 527 (1987).

The defendant argues that Detective Burke's statements were the functional equivalent of a custodial interrogation because Detective Burke knew or should have known that his statement about finding the drugs would elicit a response from the defendant. See Defendant's Supplemental Memorandum of Law in Support of Motions to Suppress Evidence and Statements (DE# 43 at 1, 8/7/08). The government counters that "Detective Burke's words and actions do not meet the definition of interrogation, or its functional equivalent, because they were not reasonably likely to elicit an incriminating response." See Memorandum in Support of Government's Response to Defendant's Motion to Suppress Statements (DE# 42 at 1, 8/6/08).

The undersigned finds that Detective Burke's words and actions were not intended, or likely, to elicit an incriminating response from the defendant. In United States v. McKenzie, 132 Fed. Appx. 788, 790 (11th Cir. 2005), the Eleventh Circuit affirmed a defendant's conviction based in part on pre-Miranda statements made by the

9

defendant to law enforcement. In McKenzie, law enforcement officers executed a search warrant at the defendant's home while the defendant was not present. An officer saw the defendant as he approached the home and placed the defendant under arrest. The officer did not read the defendant his Miranda rights. "[The defendant] continually talked to the officers, often in an abusive manner. . . . [T]he officers requested that [the defendant] stop talking on numerous occasions." Id. at 789. At trial one of the officers testified about the following conversation he had with the defendant: "I advised [the defendant] that we found some marijuana and some cocaine, and he told me that he smoked marijuana and did I ever think he was a user or did I just figure he was a dealer." The Eleventh Circuit concluded that the officer did not interrogate the defendant: "[The officer] merely stated what was discovered in [the defendant's] room; he did not ask [the defendant] questions about the seized contraband." Id. at 790. Similarly, the Court found that the conversation between the defendant and the officer was not the functional equivalent of an interrogation. Id.

McKenzie is similar to the instant case. As in McKenzie, Detective Burke stated to the defendant that he had found what the defendant had been hiding. Detective Burke did not question the defendant about the drugs. The defendant distinguishes McKenzie on the ground that "the statements . . . made by police authorities were not as accusatory, confrontational, or coercive as the statements in the instant case." See Defendant's Supplemental Memorandum of Law in Support of Motions to Suppress Evidence and Statements (DE# 43 at 3, 8/7/08). The undersigned disagrees. The arrest or seizure of a defendant alone is not so coercive so as to transform a situation into a functional interrogation. McKenzie, 132 Fed Appx. at 790 (citing United States v. Glen-

10

Archila, 677 F. 2d 809, 815 (11th Cir. 1982)). Similarly, Detective Burke's placement of the firearm on top of the trunk of the defendant's vehicle was not the functional equivalent of an interrogation. See United States v. Hicks, 546 F. Supp. 2d 1378, 82 (N.D. Ga. 2008) (placing firearm on trunk of vehicle in front of a defendant was not the functional equivalent of an interrogation). The undersigned finds that Detective Burke's statement that he found what the defendant was hiding coupled with Detective Burke showing the drugs to the defendant was not designed to elicit, or should have elicited, a response from the defendant.

The statements made by the defendant in the instant case were voluntary. Because the defendants' statements to Detective Burke were not the product of a custodial interrogation, or its functional equivalent.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's Motion to Suppress Statements and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 33, 7/28/08) and Defendant's Motion to Suppress Evidence and Incorporated Memorandum of Law and Request for an Evidentiary Hearing (DE# 34, 7/28/08) be **DENIED**.  Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Patricia A Seitz, United States District Judge, within ten (10) days of receipt of a copy of this Report and Recommendation. See Nettles v. Wainwright, 677 F. 2d 404 (5th Cir. 1982). **A party filing an objection to this Report and Recommendation shall order a transcript of the suppression hearing and**

**promptly provide a copy to the Court.**

DONE AND ORDERED, in Chambers, at Miami, Florida this **7th** day of August, 2008.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:

United States District Judge Seitz
All counsel of record